*515
 
 OPINION OF THE COURT
 

 Titone, J.
 

 The question to be resolved on this appeal is whether the State and the New York State Board of Parole may be held liable for negligently releasing dangerous prisoners on parole, where the parolees inflict serious injuries upon members of the public. We hold that since parole release decisions are quasi-judicial in character, the State and its employees are absolutely immune from tort actions arising from such decisions.
 

 I
 

 Claimant Myrna Tarter was shot in the vestibule of her apartment building by one Michael Montgomery. He had been convicted four years earlier of attempted manslaughter in the first degree and criminal possession of a weapon in the second degree for a similar shooting. After serving 4 of the 4 to 12 years to which he was sentenced, Montgomery was released on parole. Less than two months later, he shot Tarter and rendered her a paraplegic.
 

 In her claim against the State, Tarter alleged that the State Division of Parole and the State Board of Parole failed to act in accordance with the law in paroling Montgomery, to supervise Montgomery in accordance with the terms of his parole, to obtain and file complete information with regard to Montgomery, to properly condition his parole, to investigate violations of parole committed by Montgomery and to revoke his parole. Upon defendant’s motion to dismiss, the Court of Claims held that the claim contained insufficient factual allegations and dismissed with leave to file an amended claim within 90 days. Claimant’s cross motion for disclosure was denied. The Appellate Division modified holding that the allegation that the Parole Board failed to act "in accordance with the law” (Executive Law § 259-i [5]) stated a claim with sufficient specificity, given the lack of disclosure to date. The court granted leave to appeal to this court and certified the following question: "Was the order of this Court, which modified the order of the Court of Claims of the State of New York, properly made?”
 

 II
 

 As claimant William Tyner waited in his car for a red light to change, Leslie Pastrana suddenly opened the passenger
 
 *516
 
 door of Tyner’s vehicle and shot him in the abdomen. Tyner, too, became a paraplegic as a result of the shooting. One year earlier, Pastrana had been convicted of attempted burglary in the second degree, the crime involving the threatening and attacking of a police officer with a knife. Pastrana served one year of a sentence of one to three years and was released on parole. The subsequent shooting occurred less than two months later.
 

 Two and one-half years after the shooting, Tyner made a motion in the Court of Claims to file a late claim against the State and the New York State Board of Parole (Court of Claims Act § 10 [6]) and for an order granting preclaim discovery (Court of Claims Act § 17 [2]; CPLR 3102 [¶] [amended L 1984, ch 294, § 3]). He alleged that the Board had released Pastrana recklessly and in violation of its own procedures. The motion to file a late claim was granted and the preclaim discovery motion adjudged moot. The Appellate Division affirmed, but granted leave to this court, certifying the following question: "Was the order of the Court of Claims of the State of New York as affirmed by this Court, properly made?”
 

 Ill
 

 The procedures governing parole are found in Executive Law article 12-B (§ 259
 
 et seq.).
 
 The Board of Parole, at least one month prior to the expiration of the minimum period of imprisonment fixed by the sentencing court, must conduct an interview of the inmate and "determine whether he should be paroled at the expiration of the minimum period * * * in accordance with the guidelines adopted pursuant to subdivision four of section two hundred fifty-nine-c” (Executive Law § 259-i [2] [a]; 9 NYCRR 8002.2). The guidelines promulgated to aid in making the discretionary parole release decision required that, in addition to a mathematical grid which reflects the usual parole dispositions in cases involving similar offenses, the following be considered: "(1) the institutional record, including program goals and accomplishments, academic achievements, vocational education training or work assignments, therapy and interpersonal relationships with staff and inmates; (2) performance, if any, as a participant in a temporary release program; and (3) release plans, including community resources, employment, education and training and support services available to the inmate” (9 NYCRR
 
 *517
 
 8002.3;
 
 see,
 
 Executive Law § 259-i [2] [c]). Moreover, it is specifically stated that a discretionary release is not to be granted merely as a reward for good behavior in prison, but after considering whether there is a reasonable probability that the inmate will remain at liberty without violating the law if released, that the release will not endanger society and that the release will not so deprecate the severity of the crime as to undermine respect for the law (Executive Law § 259-i [2] [c]; 9 NYCRR 8002.1). Consideration of the guidelines is mandatory prior to a parole decision (9 NYCRR 8002.1, 8002.3), but the ultimate decision is discretionary
 
 (see,
 
 Executive Law § 259-i [2] [c];
 
 Matter of Russo v New York State Bd. of Parole,
 
 50 NY2d 69;
 
 Matter of Ganci v Hammock,
 
 99 AD2d 546, 547; 9 NYCRR 8002.1).
 

 It is the Board’s alleged failure to consider the guidelines that forms the substance of claimants’ claims. Neither claimant attempts to convince the court that an exercise of discretion ending in an erroneous disposition would lead to liability. Indeed such a ruling would conflict with this court’s line of decisions foreclosing suit against a governmental unit as a result of an official’s negligent exercise of discretion
 
 (see, e.g., Tango v Tulevech,
 
 61 NY2d 34;
 
 Rottkamp v Young,
 
 21 AD2d 373,
 
 affd
 
 15 NY2d 831). Instead, claimants argue that the Board failed to perform the supposedly ministerial act of considering the mandatory guidelines.
 

 Executive Law § 259-i (5) states: "Any action by the board pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law.” Claimants maintain that this section affords immunity to the Board from tort liability only when it acts in accordance with the law. We disagree. The process delineated in section 259-i (5) has no bearing on the discrete question before us, relating to the nature and extent of the liability of Parole Board members to third parties. Claimants’ arguments on this point are irrelevant. Clearly, as is true with many judicial functions, a higher authority may
 
 review
 
 a decision with the possible view toward a reversal or modification to correct an error of law
 
 (see, e.g.,
 
 CPLR 5501), and parole dispositions may be annulled if found not to have been made in accordance with the law (CPLR 7801;
 
 Matter of Ganci v Hammock, supra).
 

 On the other hand, the " 'erroneous manner in which [the court’s] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a
 
 *518
 
 judicial act’ ”
 
 (Stump v Sparkman,
 
 435 US 349, 359
 
 reh denied
 
 436 US 951, quoting
 
 Bradley v Fisher,
 
 13 Wall [80 US] 335, 357). A Judge is not protected from a civil suit by an unsuccessful litigant merely when the Judge’s decisions are letter-perfect. Judges have long been immune even from tort liability suits alleging that their decisions were tainted by improper motives
 
 (see, e.g., Stump v Sparkman, supra,
 
 pp 358-363;
 
 Bradley v Fisher, supra; Murray v Brancato,
 
 290 NY 52, 55;
 
 Yates v Lansing,
 
 5 Johns 282, 291). Courts have recognized that it is imperative to the nature of the judicial function that Judges be free to make decisions without fear of retribution through accusations of malicious wrongdoing. It has been adjudged worth the price of leaving some injured parties without a remedy to allow such officials to exercise the independence of judgment critical to our judicial system without harassment or intimidation
 
 (Cleavinger v Saxner,
 
 474 US —, 106 S Ct 496;
 
 Butz v Economou,
 
 438 US 478, 514;
 
 Bradley v Fisher, supra).
 

 This is no less the case with respect to government officials who exercise quasi-judicial functions. The nature of judicial immunity is that it plainly protects Judges only in the performance of their judicial functions
 
 (Stump v Sparkman, supra; Murray v Brancato, supra;
 
 Prosser and Keeton, Torts § 132, at 1058 [5th ed];
 
 see also, Park Knoll Assoc. v Schmidt,
 
 59 NY2d 205, 209). The immunity stems from the special nature of the judicial duties
 
 (Butz v Economou, supra).
 
 Logically, other neutrally positioned government officials, regardless of title, who are delegated judicial or quasi-judicial functions should also not be shackled with the fear of civil retribution for their acts
 
 (id., pp
 
 513-514; Prosser and Keeton, Torts § 132, at 1059 [5th ed];
 
 see also, Harlow v Fitzgerald,
 
 457 US 800, 807).
 

 The functions of the impartial Board in deciding whether to grant parole are classically judicial tasks
 
 (Butz v Economou, supra,
 
 pp 513-514;
 
 Sellars v Procunier,
 
 641 F2d 1295, 1303,
 
 cert denied
 
 454 US 1102;
 
 see also, Cleavinger v Saxner, supra,
 
 p 502;
 
 Santangelo v State of New York,
 
 101 AD2d 20, 28). The Board must measure the facts of a particular inmate’s case against the backdrop of the guidelines. Just as a Judge performs the original sentencing function, weighing the defendant’s particular situation against case law, sentencing statutes and the Judge’s prior experience, the Board must fit the inmate’s factual circumstances within the guidelines and use its discretion in its disposition of the matter. Both are decisions which involve the officials’ expertise, an application of
 
 *519
 
 law and an exercise of their judgment. We do not suggest that every official act involving discretion will be considered a judicial function conferring absolute immunity. It is the peculiar nature of the duties of the Board of Parole with respect to the weighing of evidence, deciding the relative importance of the determining factors and the ultimate discretionary disposition which render it so. Therefore, the Board’s actions are entitled to absolute immunity, notwithstanding that discovery could prove claimants’ allegations.
 

 Finally, any claim based upon the negligent supervision of the parolees must fail because of the complete lack of allegations of both a special duty to protect the claimants as identified individuals and the reliance on the part of the claimants on specific assurances of protection
 
 (Helman v County of Warren,
 
 67 NY2d 799, 801;
 
 De Long v County of Erie,
 
 60 NY2d 296).
 

 Accordingly, in
 
 Tarter v State of New York
 
 the order of the Appellate Division should be reversed, without costs, the motion to dismiss the claim granted, the claim dismissed and the certified question answered in the negative. In
 
 Tyner v State of New York,
 
 the order of the Appellate Division should be reversed, with costs, and claimant’s motion to file a late claim denied; the certified question is not answered as it is unnecessary.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Hancock, Jr., concur; Judge Alexander taking no part.
 

 In
 
 Tarter v State of New York:
 
 Order reversed, etc.
 

 In
 
 Tyner v State of New York:
 
 Order reversed, etc.