OPINION OF THE COURT
Gerard M. Weisberg, J.
On February 14, 1984 parolee George Agosto shot and killed Police Officer Thomas Ruotolo and seriously injured Officers Hipólito Padilla and Tanya Brathwaite as they attempted to apprehend him. Agosto, it is alleged, was at large because his parole officers violated section 259-i (3) of the Executive Law *112 and section 8004.2 (9 NYCRR) of the regulations promulgated thereunder by failing to report Agosto’s arrest for burglary to the Parole Board. The issue before us is whether this asserts a cause of action in light of Tarter v State of New York (68 NY2d 511), Eiseman v State of New York (70 NY2d 175) and Santangelo v State of New York (71 NY2d 393), all of which noted but left unanswered this question.
As alleged by claimants, on March 26, 1979, Agosto was sentenced concurrently to a term of from 5 to 15 years for manslaughter and 0 to 7 years for criminal possession of a weapon. After receiving credit for time served under a prior youthful offender adjudication, he became eligible for parole and was released on August 23, 1982. He was assigned to the Bronx West Parole Office.
Agosto reported to this parole office until July 5, 1983 when he was taken into custody by the police and charged with burglary and resisting arrest. Although his parole officers were notified of these events, they failed to report the violations to the Parole Board in contravention of 9 NYCRR 8004.2.[1] It is claimants’ theory that had the Board been notified, it would have revoked Agosto’s parole, thereby preventing the tragedy.[2] The State, relying on Tarter v State of New York (68 NY2d 511, supra) and Santangelo v State of New York (71 NY2d 393, supra), moves for summary judgment dismissing the claim.
In Tarter v State of New York (68 NY2d 511, supra), claimants who were shot by parolees sued the State on the theory that the Parole Board had failed to act in accordance with law in releasing the assailants. Specifically, it was asserted that the Board omitted to perform the supposedly ministerial act of considering the parole release guidelines. The Court of Appeals dismissed the claims holding the Board absolutely immune when engaged in the judicial task of deciding whether to grant parole. With respect to the victims’ additional claim *113 that the parole officers had been negligent in supervising the parolees after their release, the court held it equally deficient "because of the complete lack of allegations of both a special duty to protect the claimants as identified individuals and the reliance on the part of the claimants on specific assurances of protection”. (Supra, at 519.)
Thus, the court differentiated between the governmental tasks of granting parole and supervising parolees. The former was labelled judicial and granted absolute immunity; the latter was treated as a police function which could be actionable only upon the breach of a specifically assumed and relied-on duty.
This relatively straightforward pronouncement was rendered less clear, however, by Eiseman v State of New York (70 NY2d 175, supra). In Eiseman, the victim was murdered by a parolee. Attempting to distinguish Tarter (supra), the claimant’s estate alleged that the parole officer had violated a statutory duty in failing to revoke the assailant’s parole, thereby constituting negligence as a matter of law. The Court of Appeals first found as a factual matter that no statutory violation had taken place. With respect to common-law negligence, the court stated: " ’The acts of the corrections officials and parole supervisors in monitoring Campbell’s release involved the kinds of policy determinations which are of a discretionary or quasi-judicial nature and therefore insulated from liability.’ ” (Supra, at 184, quoting Eiseman v State of New York, 109 AD2d 46, 57-58.)
Thus, in Eiseman (supra), parole supervision was apparently converted from a police function to a discretionary or quasi-judicial function and a no-duty analysis became an immunity analysis. The effect a statutory violation might have on the equation was left unanswered.
Eiseman (supra) was followed by Santangelo v State of New York (71 NY2d 393, supra). In Santangelo, police officers who were injured by an escaped mental patient brought suit on two theories: that the State was negligent in permitting the assailant to obtain his freedom and that it violated Department of Mental Hygiene regulations requiring notice of the escape to be provided to the police.
With respect to the common-law theory, the court extended the "fireman’s rule” to police officers injured in the line of duty, holding that public policy precluded recovery. Inasmuch as police are hired to confront and deal with negligently *114 created emergencies, to allow recovery, the court reasoned, would be anomalous, resulting "in the payment of damages by the public for injuries sustained by the experts it employs to deal with such situations.” (Supra, at 398.)
As to the claim based on the breach of the regulation, the court affirmed the findings below that there had been no violation, or if there had been, it was not the proximate cause of claimants’ injury because the police had received actual notice of the escape. (Supra.)
Here, claimants, including the deceased, were police officers shot in the line of duty while arresting a felon. We therefore need not decide whether the parole officials were engaged in activity which was quasi-judicial or discretionary, or whether the harm resulted from a ministerial error or simply the failure to provide police-type protection. Santangelo (supra) bars relief based on any common-law theory of negligent supervision on public policy grounds. Unresolved by Santangelo, Eiseman (supra) and Tarter (supra), however, is a question which we must decide: whether the result is the same where liability would be predicated on the violation by parole officers of a specific regulation.
Statutes and regulations play several roles in the calculus of negligence. Where a duty otherwise exists, a statute may provide a minimum level of due care, the breach of which will constitute negligence as a matter of law. (Prosser and Keeton, Torts § 36, at 220; PJI 2:25.) Similarly, the violation of a regulation may be some evidence of negligence. (PJI 2:29.)
Where a common-law duty does not exist (or even where it does), statutes and regulations may provide an independent basis for liability. (See, e.g., Labor Law § 240; General Municipal Law § 205-a; Real Property Law § 235-b.)
Whether the violation of a statute or regulation which prohibits or mandates specified conduct provides a cause of action to a person injured as a result of its breach must to a great extent depend on the intent of the Legislature. (Bums Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314.)
In order to determine such intent, the factors relied on include whether the enactment: prohibits conduct or directs the providing of a municipal service; is directed to or at a governmental or a nongovernmental entity; is for the benefit of society in general or directly for a particular class of individuals; and most importantly, whether the Legislature *115 has explicitly provided for such a right. (Supra; see also, Carpenter v City of Plattsburgh, 105 AD2d 295, affd on opn below 66 NY2d 791.)
When the Legislature decides to provide a private cause of action for the breach of a statute or regulation, it knows how to unambiguously do so. For example, Alcoholic Beverage Control Law § 65 (2) prohibits the sale of alcoholic beverages to visibly intoxicated persons and General Obligations Law § 11-101 provides that anyone injured in violation thereof shall have a right of action against the seller. (See, Mitchell v The Shoals, 19 NY2d 338.) Highway Law § 102 provides that each county is under a duty to maintain its roads and highways and Highway Law § 139 provides for liability should it fail to comply. (See, Lopes v Rostad, 45 NY2d 617.) Civil Service Law § 75 bars the removal of permanent public employees without a hearing held in accordance with the terms of the section and Civil Service Law § 77 provides a right of recovery for its violation. (See, Austin v Board of Higher Educ., 5 NY2d 430.)
Alternatively, where a statute or regulation which directs governmental action is not for the claimant’s direct benefit, and where no private right of action is explicitly authorized, its breach, in and of itself, will generally not result in liability. (See, e.g., Kenavan v City of New York, 70 NY2d 558; Steitz v City of Beacon, 295 NY 51; Moch Co. v Rensselaer Water Co., 247 NY 160; Hinnigan v State of New York, 94 AD2d 830; see also, Restatement [Second] of Torts § 288.)[3]
Here, the regulation in question directed governmental action; the duty to report parole violations ran in favor of the Board and only indirectly to the claimants’ benefit and then only as members of the general public; and no private cause of action was authorized. We therefore conclude that 9 NYCRR 8004.2 (d) (1) creates no independent duty or cause of action in *116 favor of claimants which could support liability and circumvent Santangelo’s bar.[4]
Finally, claimants seek discovery which they assert will forestall the above result. They seek Division of Parole records which they claim will demonstrate defendant’s awareness of Agosto’s dangerous propensities, thereby establishing the foreseeability of harm.
Whether Agosto’s conduct was foreseeable or not, the violation of 9 NYCRR 8004.2 does not provide claimants with an independent cause of action and Santangelo (supra) bars common-law relief. The discovery sought would therefore serve no purpose. (Matter of Molter v State of New York, Ct Cl, Apr. 28, 1987, Hanifin, J.)
While denominated as a motion for summary judgment, the thrust of defendant’s argument is that assuming everything claimants allege is true, they have no cause of action, thereby justifying dismissal. We agree. (Cohen v City Co., 283 NY 112; 4 Weinstein-Korn-Miller, NY Civ Prac |f 3212.10.)
Upon the foregoing, defendant’s motion is granted and the claim is dismissed.

. That regulation provides in pertinent part: "If a releasee has been arrested for a crime, the parole officer having charge of such releasee shall cause an investigation to be made into the facts and circumstances surrounding that arrest and shall submit a report in writing to a board member.” (9 NYCRR 8004.2 [d] [1].)

. Inasmuch as the regulation in question also vested the Board with the discretion not to revoke Agosto’s parole (9 NYCRR 8004.2 [d] [2]; see, People v Alston, 77 AD2d 906), the claim is speculative. Whether it is impermissibly so is an issue we do not address in light of our decision to dismiss on other grounds.

. The State also relies on Cuffy v City of New York (69 NY2d 255) for the proposition that absent the assumption of a special duty it cannot be held liable for a failure to enforce the criminal laws against third parties. While the policy behind the ruling may be applicable, we think there is a difference between decisions concerning the allocation of police resources and whether or not third-party breaches of the law warrant arrest — decisions which are necessarily discretionary in their scope — and an actual breach by the State of a regulation which permits no discretion. Be that as it may, assuming Cuffy applies, the result is the same because no special duty was assumed.

. Annexed to claimants’ papers is a report, in letter form, of Lawrence T. Kurlander, then Director of Criminal Justice, dated March 19, 1984. The document is addressed to "Mr. Phil Caruso [of the] Patrolmen’s Benevolent Association” and concerns the handling of Agosto’s parole and claimants’ shooting. It concludes with the following: "[W]e believe that responsibility must be accepted for the serious errors which occurred in this matter. We will take all possible action to correct the deficiencies in the system which this incident tragically illustrated.” Assuming, arguendo, that Mr. Kurlander was authorized to speak on behalf of the State (compare, Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, with Brusca v El Al Israel Airlines, 75 AD2d 798, and Pekelis v Transcontinental & W. Air, 187 F2d 122, cert denied 341 US 951), we believe this report proposes no more than to amend the procedures and regulations involved to avoid a repetition. Determination of tort liability for their breach, however, even if intended, is the prerogative of the courts and not the executive.