Mary Beth O. Ruotolo, as Administratrix of the Estate of Thomas Ruotolo, Deceased, et al., Appellants, v State of New York, Respondent. (Claim No. 70726.)

First Department, February 4, 1993

### APPEARANCES OF COUNSEL

*Joseph L. Decolator* of counsel, Lake Success *(Raymond E. Kerno* with him on the brief; *Lysaght, Lysaght & Kramer, P. C.,* attorneys), for appellants.

*Michael S. Buskus* of counsel, Albany *(Peter H. Schiff* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J.

There is a long-standing common-law rule that firefighters who are injured while fighting a fire cannot recover against a property owner or occupant whose negligence in maintaining

the premises caused such injuries. Over the years, this so-called "fireman's rule" has been premised on various grounds, including the firefighters' status as licensees, their assumption of the risks entailed in fighting fires and, most recently, public policy.

In 1935, the Legislature, in an effort to ameliorate this rule, enacted General Municipal Law § 205-a, which provided a cause of action for the injury to or death of a firefighter in the line of duty caused "directly or indirectly as a result of any neglect, omission, wilful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state or city governments or of any and all their departments" (L 1935, ch 800, § 2).

Inasmuch as the stated intention of the Legislature was to create a cause of action under the prescribed circumstances where otherwise there would be none, the statute is to be construed liberally and the Legislature "may be considered as having intended to impose liability in any case where there is any practical or reasonable connection between a violation and the injury or death of a fireman. (See *Daggett* v. *Keshner,* 284 App. Div. 733 [BREITEL, J.].)" *(McGee v Adams Paper & Twine Co.,* 26 AD2d 186, 195, *affd* 20 NY2d 921.) Nonetheless, the section's history has been held to compel the conclusion that its scope is limited to property owners and the maintenance of premises in a safe condition for firefighters and may include, although it is not limited to violations of fire preventive regulations *(Kenavan v City of New York,* 70 NY2d 558, 566-567; *Lusenskas v Axelrod,* 183 AD2d 244).

Despite the enactment of section 205-a, the original fireman's rule has continued to be applied to police officers on the public policy ground that, "[l]ike firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence, and like firefighters they generally cannot recover damages for negligence in the very situations that create the occasion for their services." *(Santangelo v State of New York,* 71 NY2d 393, 397.)* It was in this context that this claim originally arose but, as we shall see, the legal landscape has since been changed.

At approximately 6:40 P.M. on the evening of February 14, 1984 (St. Valentine's Day), as New York City Police Officer Thomas Ruotolo and his partner Officer Tanya Brathwaite

were responding to a radio report that there had been a robbery of a moped at gunpoint, they observed one George Agosto near a moped at a gas station at 900 East 149th Street in the Bronx. As the officers got out of their patrol car, Agosto opened fire on them with a handgun, killing Officer Ruotolo and seriously wounding Officer Brathwaite. An off-duty police officer Hipolito Padilla came to their assistance and was also seriously wounded in an exchange of shots with Agosto who was also wounded and arrested.

At the time, Agosto (spelled Acosto in one report), who was also known as Santiago Segarra, was on parole from a March 26, 1979 manslaughter conviction, having been released sometime after August 23, 1982. After his release, Agosto was arrested on January 30, 1983 on charges of possession of a handgun and driving without a license. This rearrest was reported to the Parole Board with a recommendation that no action be taken pending court consideration. On May 9, 1983, the weapons charge was dismissed against Agosto and there is no record of any disposition of the driving infraction. Agosto was again arrested on July 5, 1983 on charges of burglary and resisting arrest. Although he used the alias Hector Rivera, his true identity was ascertained and notices were sent to the Division of Parole. On August 4, 1983, Agosto was sentenced to four months in jail upon his conviction of the reduced charge of criminal mischief and he was released from Rikers Island on September 21, 1983. Although the police, prosecutor, court and parole authorities were aware of this arrest and conviction and Agosto was considered an absconder after it was ascertained in December 1983 that he was no longer living at his last known address, this information was not reported to the Parole Board and no parole violation warrant was ever issued against him prior to the St. Valentine's Day shootout.

The claim at bar was jointly filed on March 25, 1985, seeking a total of $200 million for personal injuries and, in the case of Officer Ruotolo, for wrongful death. Claimants allege that the State through the Parole Board and its employees was negligent in not revoking Agosto's parole and taking steps to incarcerate him, thus violating the relevant statutes, rules, regulations and practices resulting in the damages claimed. Issue was joined in June 1985 and subsequently defendant moved, *inter alia,* for summary judgment dismissing the claim, which relief was granted in a decision of the Court of Claims (Gerard M. Weisberg, J.), dated September

2, 1988 (141 Misc 2d 111), holding that claimants' theory of negligent supervision was barred on public policy grounds by the original fireman's rule (citing *Santangelo v State of New York,* 71 NY2d 393, *supra),* and that the regulation allegedly violated by the failure to report the parole violation to the Parole Board runs in favor of the Board and creates no independent duty or cause of action in favor of claimants (citing *Tarter v State of New York,* 68 NY2d 511; *Eiseman v State of New York,* 70 NY2d 175).

On July 12, 1989, while claimants' appeal to this Court was pending, the Legislature amended the General Municipal Law by adding a new section 205-e, which granted police officers or their representatives the right to maintain an action to recover damages for personal injury or death notwithstanding the fireman's rule. (L 1989, ch 346.) However, this Court, in affirming the Court of Claims' decision, did not reach the question of that statute's applicability in this case inasmuch as such statute could not be applied retroactively, citing *Murphy v Board of Educ.* (104 AD2d 796, *affd for reasons stated at App Div* 64 NY2d 856). *(Ruotolo v State of New York,* 157 AD2d 452, *lv denied* 75 NY2d 710, *rearg denied* 76 NY2d 773.)

Thereafter, on July 22, 1990, the Legislature again amended the statute to, *inter alia,* revive every cause of action for the personal injury or wrongful death of a police officer which was pending or was dismissed on or after January 1, 1987 (L 1990, ch 762). The memorandum in support of the bill stated that despite enactment of chapter 346, there had been conflicting court interpretations of whether injuries and deaths that occurred prior to its effective date could be redressed and that by declaring chapter 346 remedial, its purpose was to ensure that actions by police officers or the representatives of police officers who were killed or injured prior to July 12, 1989, whose causes of action were not time barred or finally adjudicated could be brought under the new law (Mem of State Exec Dept, 1990 McKinney's Session Laws of NY, at 2494).

By notice of motion dated February 7, 1991, claimants moved in the Court of Claims to reargue (denominated a motion to renew) defendant's motion for summary judgment and for vacatur of the court's prior order dismissing their claims. By order entered August 8, 1991, the Court of Claims (Gerard M. Weisberg, J.), denied claimants' motion. (151 Misc 2d 820.) It disagreed in part with the decision dismissing the revived claim in *Santangelo v State of New York* (149 Misc 2d

171), where the court (Louis C. Benza, J.) found that the State had acquired final, vested rights by virtue of the first judgment dismissing the claim (129 Misc 2d 898, *affd* 127 AD2d 647, *affd* 71 NY2d 393, *supra)* and that the retroactive abrogation of vested rights is offensive to section 6 of article I of the State Constitution. That decision, referred to as *Santangelo II* is presently on appeal to the Second Department and is scheduled to be heard shortly.

In so ruling, the court nevertheless found that, although claimants were clearly timely within section 205-e as amended, contrary to the holding in *Brown v Ellis* (145 Misc 2d 1085, *affd sub nom. Brown v Harrington,* 150 Misc 2d 375) the legislative history of the section confirms that it is to be construed in pari materia with section 205-a and that the statute and regulation allegedly violated are not ones which deal with on-premises safety and maintenance. It went on to say: "Moreover, even if we were to broaden the rule to include off-premises safety regulations, we think they should be limited to those which were intended to create a duty or private right of action in the claimants' favor. As has been previously held, and affirmed on appeal, these do not. The claimants may therefore not rely on them. *(See, Kenavan v City of New York,* 70 NY2d 558, *supra; Campbell v Lorenzo's Pizza Parlor,* 172 AD2d 478; *Wawrzyniak v Sherk,* 170 AD2d 972, *supra.)* In either case, they have failed to state a cause of action." (151 Misc 2d 820, 828, *supra.)*

This appeal ensued and, in their brief prepared in May 1992, claimants argued that the Court of Claims incorrectly construed section 205-e to be in pari materia with section 205-a in that, while section 205-a was derived from section 761 of the Greater New York Charter (L 1901, ch 466, originally enacted as L 1882, ch 410, § 453) and was limited in scope to on-premises injuries, section 205-e has an entirely different genesis and legislative history in that it was enacted in direct response to *Santangelo v State of New York (supra),* a case where the police officer claimant was injured while apprehending a violent mental patient who had escaped from a State hospital and the State was sued not in its capacity as a property owner, but in its ministerial capacity (citing, *inter alia, Brown v Ellis, supra).*

The State responded that even if the statute could constitutionally be applied retroactively to these claimants, it would not revive the claim since section 205-e created a remedy for violations of statutes, ordinances or regulations which related

only to the maintenance of the safety of premises as held by every Appellate Division: in the case of this Court, three times (*Sciarrotta v Valenzuela*, 182 AD2d 443; *Cooper v City of New York*, 182 AD2d 350, *lv granted* 81 NY2d 701; *Buckley v City of New York*, 176 AD2d 207, 208-209, *lv denied* 79 NY2d 757).

In the meantime, on July 17, 1992, the Governor signed a further amendment to section 205-e to provide that it applied to police officers injured or killed in the line of duty "at any time or place" and further provided for the revival of any action for the personal injury or wrongful death of a police officer which was pending on or after January 1, 1987 because this section was not yet effective, or which would have been actionable on or after January 1, 1987 had this section been effective and extended the time within which to bring such an action to June 30, 1993 (L 1992, ch 474).

If any doubt persisted regarding the legislative intent in its original enactment of section 205-e, it has been laid to rest by the Legislature's own pronouncement:

"§ 1. Legislative intent. The legislature finds that the nature of modern police work in this state has exposed our police officers to a *[sic]* unprecedented risk of death and physical injury. In view of this fact, chapter 346 of the laws of 1989 gave injured officers and representatives of deceased officers a right of action against individuals found liable for such deaths or injuries.

"The legislature concludes that the duties of our state's police officers are performed in a variety of contexts and that the liability imposed pursuant to chapter 346 of the laws of 1989 should not be limited to violations pertaining to the safe maintenance and control of premises. Since our police officers are required to confront dangerous conditions under many and varied circumstances, there is a need to ensure that a right of action exists regardless of where the violation causing injury or death occurs."

Moreover, an examination of the Bill Jacket reveals that the 1992 amendment was enacted in response to the decisions of this and the other Appellate Divisions limiting the applicability of the section to premises-related violations.

When it became aware of this new legislation, the State moved for permission to file a supplemental brief and appendix (M-4660), which motion was granted, and both parties have submitted supplemental briefs and appendices.

Although recognizing the familiar principle that an appel-

late court applies the law as it exists at the time of its decision, even if that law has just recently changed and was different when the lower court rendered its decision (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2221:8, at 184), the Attorney-General as counsel for the State of New York takes the anomalous position of attacking the constitutionality of the new amendment *(see,* Executive Law § 71, which mandates that where the constitutionality of a statute is brought into question, the Attorney-General shall appear in support of its constitutionality).

While conceivably there might be situations where such a stance might be appropriate *(see, e.g., First Constr. Co. v State of New York,* 221 NY 295, 310), in the case of a retroactive statute "the State which enacted it may not be heard to complain that the enactment is void as a violation of 'due process' *(City of Trenton* v. *New Jersey,* 262 U. S. 182, 188; *Hatch* v. *Reardon,* 204 U. S. 152, 160)." *(Sweeney v State of New York,* 251 NY 417, 419-420.)

Nevertheless, the State repeats its argument in *Santangelo II (supra),* a case decided prior to this latest amendment, that, inasmuch as claimants had lost on the merits and a final judgment in favor of the defendant had been entered and the time within which to seek further appellate review had expired, the 1992 legislation does not apply here and that any legislative attempt to revive their claims is unconstitutional in that it contravenes the State Constitution's prohibition against the gift or loan of State money (NY const, art VII, § 8) or the audit, allowance or payment of time-barred claims (NY Const, art III, § 19).

However, the only final determination on the merits was made by this Court when it held the claimants' common-law claim was barred by the fireman's rule as applied in *Santangelo v State of New York* (71 NY2d 393, *supra).* Although the original 1989 version of section 205-e had already been enacted and was before us, we merely held that it could not be retroactively applied pursuant to the general rule that statutes are to be construed as prospective only in the absence of an unequivocal expression of a legislative intent to the contrary, and where, as was the case, the statute directs that it is to take effect immediately, it does not have any retroactive operation or effect. *(Murphy v Board of Educ.,* 104 AD2d, *supra,* at 797, citing McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b].) As a result, we did not reach the question of

the statute's applicability to this case (157 AD2d, *supra*, at 453).

As to the State's constitutional claims, section 205-e certainly does not constitute a gift or loan of State money inasmuch as there is nothing in its provisions specifically addressed to the State, nor does it constitute the allowance of a time-barred claim.

■ In the instant case, the State is no different than any other defendant against whom a claim under the new section could be asserted. Nor, is it in any different position than it has been since 1935 vis-à-vis firefighters. Likewise, where as here, the Legislature creates a cause of action where none existed previously, the courts have not held, at least with respect to actions against the State that merely because the statute establishing such right is retroactive, it is unconstitutional *(Jackson v State of New York,* 261 NY 134, 139). Indeed, the treatment of retrospective laws as a distinct constitutional issue is inappropriate inasmuch as there is no Federal or State constitutional prohibition against them except for the proscription in the United States Constitution against bills of attainder and ex post facto laws *(see generally,* 20 NY Jur 2d, Constitutional Law, § 292 *et seq.).* In very general terms, the two major factors to be weighed in determining the validity of a retroactive statute are the strength of the public interest it serves and the unfairness, if any, created by its retroactive operation (Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv L Rev 692, 727). There is no doubt of the strong public interest, as expressed by the Legislature and the Governor in both the statute itself and the memoranda in support of its enactment, in bringing police officers into parity with firefighters who have enjoyed such right of action since 1935 *(see,* Mem of State Exec Dept and Governor's Approval Mem relating to L 1989, ch 349, 1989 McKinney's Session Laws of NY, at 2140, 2404).

Although the Legislature may not sanction a mere gift of public moneys for private purposes, in certain instances it may acknowledge the justice of a private claim against the State *(Farrington v State of New York,* 248 NY 112, 115); apply procedural remedies retroactively *(Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443) revive untimely claims *(Gallewski v Hentz & Co.,* 301 NY 164) or waive a valid res judicata defense *(United States v Sioux Nation of Indians,* 448 US 371).

Moreover, while there is an ongoing controversy regarding Congress' power to ameliorate or overrule legislatively the effects of Supreme Court decisions and Federal courts are divided on the constitutionality of a new amendment to the securities laws which was meant to revive claims that would have been foreclosed by a 1991 Supreme Court decision *(Lampf, Pleva, Lipkind, Prupis & Petigrow v Gilbertson,* 501 US —, 115 L Ed 2d 321), the first two Federal appeals courts to rule on the issue have found the statute constitutional *(Henderson v Scientific-Atlanta, Inc.,* 971 F2d 1567; *Anixter v Home-Stake Prod. Co.,* 977 F2d 1533; *see,* Goldberg, *Trends in the Law, Separating Powers, Courts weigh in on rewriting of Lampf statute-of-limitations scheme,* ABA J, Nov. 1992, at 92; Pitt and Groskaufmanis, *Securities Law, Was the Lampf Quick Fix Constitutional?,* Natl LJ, Dec. 7, 1992, at 16). Similar revival statutes have also been consistently upheld by our Court of Appeals *(see, e.g., Hymowitz v Eli Lilly & Co.,* 73 NY2d 487, *cert denied* 493 US 944; *Matter of Hodes v Axelrod,* 70 NY2d 364).

In *Hymowitz, (supra,* at 515), in response to the argument that even if the statute is generally valid, it may be unconstitutionally applied in some cases which might be otherwise time barred, the Court found that the Legislature had properly determined that it would be fairer for all plaintiffs uniformly to have a specific time within which to bring their actions "rather than for the courts to begin drawing arbitrary lines transecting this area's shades of gray". That rationale should also apply in order to avoid uneven application of section 205-e to similarly situated police officers *(see, Janeczko v Duhl,* 166 AD2d 257, where this Court permitted a police officer to plead a cause of action under section 205-e for injuries suffered in 1982, almost two years prior to the events underlying this claim).

The State also suggests the possibility that this Court could avoid reaching the constitutional question inasmuch as the provisions dealing with retroactivity and revival of claims are unclear because it is not apparent that the Legislature actually intended to revive claims litigated to finality on the merits.

However, as recognized by the Court of Claims, when the Legislature amended the section effective July 22, 1990 to provide for its retroactive application its "obvious intent * * * was to provide claimants' class with a day in court on their

possible section 205-e claims * * * [and] to reopen matters such as this notwithstanding that they may have been finally determined." *(Ruotolo v State of New York, supra,* 151 Misc 2d 820, 822-823.)* As previously noted, the 1990 amendment, in pertinent part, specifically revived "every cause of action for the personal injury or wrongful death of a police officer which was pending on or after January 1, 1987, *or which was dismissed on or after January 1, 1987 because this section was not yet effective"* (L 1990, ch 762, § 2 [emphasis added]). The Legislature could not have been more specific.

Thus, there is no question that at the time the 1989 legislation was enacted, claimants' action was still pending and had not been reduced to a final judgment. Our 1990 decision merely held in effect that such claim was time barred inasmuch as we could not give the statute retrospective effect absent a specific mandate from the Legislature *(see also Jacobus v Colgate,* 217 NY 235). The Legislature having remedied that deficiency by its 1990 amendment and having further clarified its intent in its 1992 amendment, this Court cannot say that such acts are unconstitutional.

Accordingly, the order of the Court of Claims of the State of New York (Gerard M. Weisberg, J.), entered August 8, 1991, which denied claimants-appellants' motion pursuant to CPLR 2221 for reargument (denominated a motion to renew)* and vacatur of the court's prior order entered September 9, 1988, granting defendant's motion for summary judgment dismissing the claim, should be reversed, on the law, the motion granted and, upon reargument, the court's order entered September 9, 1988 should be vacated, and defendant's motion for summary judgment dismissing the claim denied, the claim reinstated and the matter remanded for further proceedings, without costs.

(M-4660.) Motion by defendant-respondent to file supplemental brief and appendix granted.

WALLACH, J. P., ASCH and RUBIN, JJ., concur.

Order of the Court of Claims of the State of New York, entered August 8, 1991, which denied claimants-appellants'

---

* Although neither party raised the issue, we note that normally an order denying a motion for reargument, even one denominated as a motion to renew, is not appealable *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2221:9, at 185). However, we deem the order of the Court of Claims appealable, inasmuch as the court, although finding claimant's motion to be one for reargument and denying it, in effect granted reargument but, upon reargument, adhered to its original decision.

motion pursuant to CPLR 2221 for reargument (denominated a motion to renew) and vacatur of the court's prior order entered September 9, 1988, granting defendant's motion for summary judgment dismissing the claim, is reversed, on the law, the motion granted and, upon reargument, the court's order entered September 9, 1988 is vacated, and defendant's motion for summary judgment dismissing the claim denied, the claim reinstated and the matter remanded for further proceedings, without costs. Motion by defendant-respondent to file supplemental brief and appendix granted.