OPINION OF THE COURT
Frank V. Ponterio, J.
On July 31, 1985 plaintiff Roger Brown was on duty as a New York City police officer, assigned to speed enforcement in an unmarked car. During his pursuit of a speeding violator, defendant Ellis, a collision took place between the vehicles of defendant Ellis and codefendant Harrington. To avoid this accident in front of him, plaintiff swerved and collided with a utility pole, suffering concededly severe injuries.
Defendant Harrington now moves for summary judgment dismissing the complaint under the "fireman’s rule” as first applied to police officers by the Court of Appeals in Santangelo v State of New York (71 NY2d 393 [1988]). Santangelo holds that as a matter of public policy police officers cannot recover damages for injuries sustained in the line of duty. (Supra, at 397.)
Plaintiffs’ response is twofold: First, the plaintiffs have a separate, statutory cause of action under recently enacted General Municipal Law § 205-e, which plaintiff argues is retroactive.
Second, he argues in the alternative that even if General Municipal Law § 205-e is not retroactive the facts of this case are sufficiently distinguishable from those in Santangelo (supra) to take it out of the Santangelo rule.
DEVELOPMENT OF THE LAW
Before confronting the parties’ arguments, a review of the development of the applicable law is in order. Since the law governing the right of police officers to recover for job-related injuries in some respects parallels that applicable to firefighters, we begin with the evolution of the "fireman’s rule”.
*1087 At one time in this State, firefighters could sue for line-of-duty injuries against negligent tort-feasors, subject to a defense that as licensees a lesser duty of care was owed to them. (See, Prosser and Keeton, Torts § 61, at 429 [5th ed]; Annotation, Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of his Duty, 11 ALR4th 597.) Later cases added a defense to liability based on an assumption of risk theory, i.e., firefighters were said to assume the risks of fire-related injuries, including the risk of negligent property owners and occupants in failing to maintain the safety of their premises. (McGee v Adams Paper & Twine Co., 26 AD2d 186 [1st Dept 1966].) Similarly, police officers could sue those whose negligence caused their on-duty injuries, subject to the heavy burden of proving that the danger causing the injury was not a usual or foreseeable risk assumed in the course of their employment and also proving freedom from contributory negligence. (Moore v City of Yonkers, 6 AD2d 712 [2d Dept 1958], lv dismissed 5 NY2d 765; Fitzsimons v Isman, 166 App Div 262 [1st Dept 1915], affd 219 NY 610; Xenodochius v Fifth Ave. Coach Co., 129 App Div 26 [2d Dept 1908].) In Moore a patrolman was injured when his motorcycle struck a hole in a city street. The Second Department denied defendant’s motion to dismiss the complaint finding that an issue of fact was presented, viz., whether the patrolman assumed the risk created by a particularly "deep and dangerous hole”. (Supra, at 713.) Both Fitzsimons and Xenodochius dealt with the contributory negligence issue for a police officer struck by an automobile while engaged in traffic duty.
The fireman’s rule was partly abrogated by section 761 of the Greater New York Charter (L 1901, ch 466, originally enacted as L 1882, ch 410, § 453). This charter provision gave firefighters a limited right of action against property owners and occupants whose negligence in failing to secure certain hazardous openings in business premises led to injury. The Greater New York Charter provided in pertinent part:
"Hoistways, iron shutters, etc., to be closed.
"§ 761. All hoistways, well-holes, trap doors, and iron shutters shall be closed at the completion of the business of each day by the occupant of the building having use or control of the same, and in case of a violation of this provision, such occupant having the use or control thereof shall forfeit and pay a penalty of fifty dollars for each and every neglect or *1088 omission so to do. And for any accident or injury to life or limb, resulting directly or indirectly from any neglect or omission to properly comply with any of the requirements of this section, the person or persons culpable or negligent in respect thereto shall be liable to pay any officer, agent, or employee of said fire department injured, or whose life may be lost while in the discharge or performance of any duty imposed by said commissioner, or to the wife and children, or to the parents, or to the brothers and sisters, being the surviving heirs-at-law of any deceased person thus having lost his life, a sum of money, in case of injury to person, not less than one thousand dollars, and in the case of death not less than five thousand dollars, such liability to be determined and such sums recovered in an action to be instituted by any person injured, or the family or relatives of any person killed as aforesaid”.
This section was in part penal in nature as is evident from the penalty provision within the section as well as relevant provisions in section 773 (as added by L 1897, ch 378): "Any person who shall wilfully violate, or neglect or refuse to comply with any provision or requirement of this title, or any regulation, order or special direction duly made thereunder, shall also be guilty of a misdemeanor” (see also, L 1882, ch 410, § 465). Thus the Greater New York Charter sought to assure the safety of firefighters on premises through the threat of both criminal and civil liability of property owners and occupants.
The civil remedy afforded by section 761, applicable only to firefighters within the then newly consolidated City of New York, was extended State-wide by the Legislature in 1935 with the enactment of General Municipal Law § 205-a, which, as amended (L 1935, ch 800, § 2, amended by L 1936, ch 251, § 1), provides:
"§ 205-a. Additional right of action to certain injured or representatives of certain deceased firemen
"In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, wilful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and *1089 all their departments, divisions and bureaus, the person or persons guilty of said negligent, omission, willful or culpable negligence at the time of such injury or death shall be liable to pay any officer, member, agent or employee of any fire department injured, or whose life may be lost while in the discharge or performance of any duty imposed by the fire commissioner, fire chief or other superior officer of the fire department, or to pay to the wife and children, or to pay to the parents, or to pay to the brothers and sisters, being the surviving heirs-at-law of any deceased person thus having lost his life, a sum of money, in case of injury to person, not less than one thousand dollars, and in case of death not less than five thousand dollars, such liability to be determined and such sums recovered in any action to be instituted by any person injured or the family or relatives of any person killed as aforesaid.”
Concurrently, the civil right of action provision was deleted from section 761 of the Greater New York Charter, which thereafter provided simply: "§ 761. Hoistways, iron shutters, et cetera, to be closed. All hoistways, well-holes, trap-doors, and iron shutters shall be closed at the completion of the business of each day by the occupant of the building having use or control of the same, and in case of a violation of this provision, such occupant having the use or control thereof shall forfeit and pay a penalty of fifty dollars for each and every neglect or omission so to do.” (As amended by L 1935, ch 800, § 1.)
Aside from extending the applicability of this statutory right of action State-wide, General Municipal Law § 205-a seemed to change its scope of protection. The original Greater New York Charter §761 and General Municipal Law § 205-a are virtually identical with one noteworthy exception. Whereas section 761 provided a right of action only for the failure of one in control of business premises to close hoist-ways, well-holes, trap doors, and iron shutters, General Municipal Law § 205-a provides a right of action for injuries resulting from a failure of any person to comply with any statutes, ordinances, rules, order and requirements of the Federal, State, county, village, town or city governments or of any and all their departments, divisions and bureaus. This significant change in wording would appear to be an unmistakable signal that the Legislature intended General Municipal Law § 205-a to have a much broader scope of protection than section 761 of the Greater New York Charter, i.e., not limited to on-premises *1090 injuries and property owners and occupants. (See, Healy v Rennert, 9 NY2d 202 [1961] [recovery by á fireman for injuries sustained in an intersection collision].) Nevertheless, the scope of General Municipal Law § 205-a was subsequently narrowly restricted to on-premises injuries. In Gerhart v City of New York (56 AD2d 790 [1st Dept 1977], lv denied 42 NY2d 810), the First Department held that General Municipal Law § 205-a applies only to property owners or persons in control of property who have violated a statute or ordinance and only in connection with fire-fighting operations. This holding was later followed by the Second Department in Citowitz v City of New York (77 AD2d 642 [2d Dept 1980]). Thereafter the Court of Appeals, citing Gerhart and Citowitz confirmed the restriction of the scope of General Municipal Law § 205-a to property owners and persons in control of property and the maintenance of premises in a safe condition for firefighters, but did not limit recovery to injuries sustained as a consequence of violations of fire preventive regulations. (Kenavan v City of New York, 70 NY2d 558 [1987].) The court based this holding on its interpretation of the intent of the seminal statute, section 761 of the Greater New York Charter.
A year after Kenavan (supra) was decided, the Court of Appeals, in Santangelo (71 NY2d 393, supra) seemingly put an end to the common-law right of police officers to sue for injuries sustained in the line of duty. The court reasoned that the same public policy considerations that formed the basis for the fireman’s rule are relevant as well to police officers. "Like firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence, and like firefighters they generally cannot recover damages for negligence in the very situations that create the occasion for their services.” (Santangelo v State of New York, 71 NY2d, supra, at 397.) The court does not make clear why it used the modifier "generally” since the rationale for its decision appears to preclude recovery by police in all line-of-duty circumstances. On the other hand the modifier is appropriate for firefighters because General Municipal Law § 205-a provides them with some right to recover damages. Any possibility that Santangelo was intended to be limited to actions against the State or its governmental subdivisions was negated by the court itself: "Here the anomaly of permitting recovery by police officers would be particularly evident: allowing recovery against the State for * * * injuries sustained by the experts it employs to deal with *1091 such situations.” (Supra, at 398; emphasis added.) By implication, the "anomaly” would exist even where the defendant is not a governmental entity.
Apparently Santangelo (supra) created an awareness in the Legislature that, while firefighters had enjoyed some relief from the fireman’s rule for over 50 years, similar relief was not available to police officers. With unprecedented speed the Legislature enacted General Municipal Law § 205-e a little over one year after the decision in Santangelo. Except for the substitution of "police” for "fire”, the operative language of General Municipal Law § 205-e is identical to that of General Municipal Law § 205-a. This new statute was approved on July 12, 1989 and made effective immediately.
SCOPE OF GENERAL MUNICIPAL LAW § 205-e
The Legislature did not express its intent as to the scope of protection of General Municipal Law § 205-e and no appellate court has yet interpreted this recent statute. It remains for this court therefore to determine whether General Municipal Law § 205-e is limited by Kenavan (supra) to on-premises injuries caused by the negligence of property owners or persons in control of property or whether it applies to the instant case which involves at most a violation of the Vehicle and Traffic Law by a negligent motor vehicle operator. The court has examined memoranda in support of the bill which resulted in General Municipal Law § 205-e by the bill’s sponsors and by the Governor. The sponsors expressed an intent to give police officers "similar protection” as for firefighters. An executive memorandum supporting approval of the bill indicates that its purpose is to bring "police officers into parity with firefighters”. (1989 McKinney’s Session Laws of NY, Adv Sh No. 5, at A-447.) A second executive memorandum however describes the intent as providing police officers with the "same right accorded firefighters” (1989 McKinney’s Session Laws of NY, Adv Sh No. 5, at A-377) with an explicit reference to a limitation to on-premises injuries and property owners.
It is fair to assume that the proportion of injuries occurring on premises through negligence of building owners is much greater for firefighters than for police officers. If police officers’ rights to recover damages were to be limited to the same circumstances applicable to firefighters, it might be said that the "same” protection results. There would however not be parity of protection. On the other hand if the scope of General *1092 Municipal Law § 205-e is unlimited, police officers would enjoy greater protection than firefighters. One might argue, for example, that it would be unfair to allow a police officer to recover for injuries sustained in a vehicle collision en route to a burglary but deny such recovery by a firefighter injured in a vehicle collision en route to a fire.
Rather than attempt to draw an arbitrary boundary line on the reach of General Municipal Law § 205-e by a microscopic analysis of the balance of police officers’ and firefighters’ protection, this court believes that the scope of General Municipal Law § 205-e is best resolved by an examination of the totality of circumstances surrounding its enactment. Although General Municipal Law §§ 205-a and 205-e read essentially the same, their origins are significantly different. General Municipal Law § 205-a has its roots in section 761 of the Greater New York Charter which was clearly designed to encourage building owners and occupants to maintain safe buildings. Neither history nor common sense supports a link between General Municipal Law § 205-e and §761. As a rule, police officers do not face injury by falling into floor openings obscured by smoke or fire. Many spend their entire tours on street duty. Those police officers who do enter buildings generally do so to make searches and arrests and face hazards under different circumstances. Moreover, it is unlikely that the added threat of a civil lawsuit would encourage the owner of a crack den to maintain his premises in a safe condition for police officers.
The swift enactment of General Municipal Law § 205-e following Santangelo (supra) strongly suggests that the dominant objective of the Legislature was to correct a perceived misstatement of public policy by the Court of Appeals and restore fully the pre-Santangelo rights of action of police officers. "Public policy of the State is evidenced by expression of the will of the Legislature contained in statutory enactments” (McKinney’s Cons Laws of NY, Book 1, Statutes § 126). "The power to determine what the policy of the law shall be rests with the Legislature within constitutional limitations, and when it has expressed its will and established a new policy, courts are required to give effect to such policy.” (Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407, 413-414 [1930].) I find that to give the intended effect to General Municipal Law § 205-e it should be construed to mean what it says, viz., that it encompasses violations of any statute, etc., *1093 and is not limited by Kenavan (supra) to on-premises injury and property owners.
EFFECTIVITY OF GENERAL MUNICIPAL LAW § 205-e
Ordinarily, statutes are presumed to operate prospectively unless a contrary intention unequivocally appears. (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [b], [c]; Murphy v Board of Educ., 104 AD2d 796 [2d Dept 1984].) Uncertainty in construction should be resolved by reference to the legislative intent. (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [d].) Section 2 of Laws of 1989 (ch 346) states "This act shall take effect immediately.” The Second Department has declared that "where a statute directs that it is to take effect immediately, it does not have any retroactive operation or effect”. (Murphy v Board of Educ., 104 AD2d, supra, at 797.) This is however not an inflexible rule. "[A] careful analysis * * * is often necessary * * * to determine whether a statute should be applied retroactively or not * * * the issue is generally a question of legislative intent, subject to constitutional limitations, and where that intent is not discernible, the court must look to the underlying purpose of the statute and attempt to effectuate it, taking into account the practicalities and realities of the situation”. (State of New York v Wolowitz, 96 AD2d 47, 60-61 [2d Dept 1983]; cf., Matter of Steinberg v Steinberg, 18 NY2d 492, 497 [1966] [which states "a policy so declared (by the Legislature) sometimes has to be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of law”].)
Notwithstanding the general rule, there is an exception for remedial statutes which can be given retroactive application to the extent that they do not impair vested rights. (McKinney’s Cons Laws of NY, Book 1, Statutes § 54 [a]; Coffman v Coffman, 60 AD2d 181 [2d Dept 1977]; cf., Matter of Cady v County of Broome, 87 AD2d 964, 965 [3d Dept 1982] [in which the court held an amendment to General Municipal Law § 207-c as remedial in the sense that it was intended "to rectify an inequity by extending existing benefits to a class of persons arbitrarily denied those benefits * * * and should be applied retrospectively” and also noting that the statute was made "effective immediately, rather thaii having a postponed effective date which would have furnished 'critical and clear indicia of (legislative) intent’ that the statute was to have prospective effect only”].)
*1094 " '[R]emedial statutes’ are those designed to correct imperfections in the prior law, by generally giving relief to the aggrieved party” (McKinney’s Cons Laws of NY, Book 1, Statutes § 35), and are to be liberally construed (McKinney’s Cons Laws of NY, Book 1, Statutes § 321), so as to spread their beneficial results as widely as possible. (Matter of Mlodozeniec v Worthington Corp., 9 AD2d 21 [3d Dept 1959], affd 8 NY2d 918, appeal dismissed and cert denied 364 US 628.) A liberal construction is one which is in the interests of those whose rights are to be protected. (Glens Falls Portland Cement Co. v Van Wirt Constr. Co., 132 Mise 95 [Sup Ct, Warren County 1928], mod on other grounds 225 App Div 159.) Such considerations favor a retroactive effectivity.
There is however an exception to the exception. Where a statute creates new rights or remedies where none previously existed it is presumed to operate only prospectively. (Jacobus v Colgate, 217 NY 235 [1916]; Kaplan v Kaplan, 31 AD2d 247 [2d Dept 1969].) Since the Court of Appeals in Santangelo (71 NY2d 393, supra) deprived police officers of any right of action for duty-related injuries, it might be said that General Municipal Law § 205-e, enacted a year later, created a new right. In light of all the circumstances this would appear to be a strained interpretation. Certainly it is not true that such right did not previously exist.
As pointed out earlier, the Legislature’s purpose was in effect to neutralize Santangelo (supra) and restore long-standing rights enjoyed by police officers at common law prior to the Santangelo decision. It is especially appropriate in the instant case to view General Municipal Law § 205-e as not creating a new right but as restoring a preexisting right. The instant action was commenced in 1987. At that time plaintiff had a cause of action at common law. One year later Santangelo extinguished this right. The following year the Legislature revived it. It is true that the rights created by General Municipal Law § 205-e are not identical to the common-law rights extinguished by Santangelo. In common-law negligence actions police officer plaintiffs were subject to the defense of assumption of risk and were held to the ordinary negligence standard of proof of proximate cause. On the other hand, in a statutory cause of action assumption of risk is not a defense, and a lesser degree of proof on causation will suffice. (Carroll v Pellicio Bros., 44 Misc 2d 832 [Sup Ct, Nassau County 1964], affd 26 AD2d 552, mod 18 NY2d 708.) Nevertheless it is clear that the Legislature took the only action available to it to *1095 negate Santangelo and to resolve what was characterized as a "substantial question of fairness * * * raised by the long term existence of a remedy for firefighters that negates the fireman’s rule that is not enjoyed by police officers as well” (1989 McKinney’s Session Laws of NY, Adv Sh No. 5, at A-377).
Furthermore, to exclude those actions accruing prior to the date of enactment of General Municipal Law § 205-e would, exclusively because of Santangelo (supra), create an arbitrarily defined, narrow class of individuals who would be denied both a common-law and a statutory right of recovery for their job-related injuries. Such a result would be manifestly unjust and would serve no redeeming public purpose. I conclude, therefore, that General Municipal Law § 205-e should be given retroactive effect.
Accordingly, defendant Harrington’s motion for summary judgment is denied. Since it is unnecessary to do so, I make no finding with respect to whether the facts of the instant action exempt it from the Santangelo rule.
Third-party defendant City of New York cross-moves for an order dismissing the third-party complaint on the ground that it fails to state a cause of action. The cross motion goes beyond the face of the third-party complaint and is essentially an application for summary judgment. The city’s argument is threefold. The first is based on Santangelo (supra) and is rejected for the reasons already presented. The second is that since the imputation of negligence to an owner of a vehicle for the acts of a driver is a statutory rule based on Vehicle and Trafile Law § 388, and since that section specifically excludes police vehicles, the city is not liable here to plaintiff simply because plaintiff operated its vehicle. There may be some authority for such a position (see, Cady v Andrews, 109 Misc 2d 571 [Sup Ct, Broome County 1981]), except that a review of defendant third-party plaintiff’s papers raises issues of fact which may found the city’s liability on more than the vicarious basis of Vehicle and Traffic Law § 388. These issues include an allegation that the city failed, by virtue of inadequate supervision of plaintiff, to prevent him from conducting a high-speed pursuit in violation of its own rules and regulations. Viability of the third-party action involves resolution of factual issues. The city’s third argument is that allowing the third-party action to go forward will cause a double reduction in Harrington’s liability: a first reduction from plaintiff’s comparative fault, if any, and a second by the city contributing the same share. This argument is without merit. The city’s *1096 liability, if any, will be determined on the basis of its own acts or omissions. The drastic remedy of summary judgment may not be granted where there are any triable issues of fact presented or where there is any doubt as to the existence of such issues. (Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439 [1968].) In making a determination of the existence of such issues the court "may not weigh the credibility of the affiants * * * unless it clearly appears that the issues are not genuine, but feigned.” (Supra, at 441.)
Accordingly, the cross motion of the City of New York is denied.