OPINION OF THE COURT
Louis C. Benza, J.
Claimants, police officers, instituted this action to recover for injuries sustained as the result of attempting to arrest a mental patient escapee. The instant claims were filed on August 27, 1990 and assigned claim Nos. 81400 and 81401. A claim was previously filed by each claimant on August 20, 1979, and the claims were assigned Nos. 63380 and 63381. For the purposes of the instant motions, the present claims will be referred to as Santangelo II, as opposed to Santangelo I for the previous claims. The cause of action for both Santangelo I and Santangelo II accrued on July 15, 1979. This court, following a full trial on the issue of liability, dismissed San-tangelo I (see, Santangelo v State of New York, 129 Misc 2d *174 898, affd 127 AD2d 647, affd 71 NY2d 393). Subsequent to entry of final judgment, the Legislature enacted General Municipal Law § 205-e (L 1989, ch 346 [eff July 12, 1989]) which created a right of action for police officers who are injured in the line of duty as a direct or indirect result of a person’s violation of a rule, a law, a statute or an ordinance. The courts of this State have held that said legislation was not intended by the Legislature to be retroactively applied (Ruotolo v State of New York, 157 AD2d 452, lv denied 75 NY2d 710; Guadagno v Baltimore & Ohio R. R. Co., 155 AD2d 981; Brown v Ellis, 145 Misc 2d 1085; O’Sullivan v Fischo Entertainment Corp., 145 Misc 2d 401). In July 1990 the Legislature amended section 205-e (L 1990, ch 762), which amendment provides that: "[Notwithstanding any other provision of law, including sections 50-e and 50-i of the general municipal law, section 3813 of the education law, section 10 of the court of claims act and the provisions of any general, special or local law or charter requiring as a condition precedent to commencement of an action or special proceeding that a notice of claim be filed or presented, every cause of action for the personal injury or wrongful death of a police officer which was pending on or after January 1, 1987, or which was dismissed on or after January 1, 1987 because this section was not yet effective, or which would have been actionable on or after January 1, 1987 had this section been effective is hereby revived and an action thereon may be commenced at any time provided that such action is commenced on or before June 30, 1991.”
As a result of this legislation, the claims in Santangelo II were filed.
Subsequent to the filing of Santangelo II, the defendant moved to dismiss the claims as res judicata. From a reading of the defendant’s original motion papers, it is apparent that the Attorney-General was not aware of the amendment to General Municipal Law § 205-e. The claimants cross-moved for summary judgment on the grounds that section 205-e revives Santangelo I and, in effect, creates an absolute liability on the defendant for injuries to police officers sustained as a result of a finding by the courts of any violation of a statute, ordinance or existing regulation. The claimants contend that in its decision in Santangelo I, the court held that the defendant had violated its own regulations and that the mental patient’s escape and continuing elopement was due to the State’s negligence (Santangelo v State of New York, 129 Misc 2d 898, *175 902, supra). The defendant contends that issue was never decided.
The defendant, in its reply affirmation, directly raises the issue of whether the 1990 amendment to General Municipal Law § 205-e can constitutionally revive Santangelo I. In the absence of any prohibition, constitutional or otherwise, this court, in a cause of action created by statutory legislation, for money damages against the State, has the authority to determine whether the cause of action, as stated, is sustainable when tested against constitutional limitations imposed upon the Legislature.
The determinative issue before the court is whether the Legislature, through Laws of 1990 (ch 762), intended to revive cases wherein final judgment had been entered and, if so, whether legislation can constitutionally retroactively affect parties’ rights which have been vested by decision of courts of competent jurisdiction. General Municipal Law § 205-e, as amended, states three different categories of cases to which the remedy added by that section could be applied retrospectively: 1. cases which were pending on or after January 1, 1987; 2. cases dismissed on or after January 1, 1987 because "this section was not yet effective” (emphasis supplied); 3. cases which would have been actionable on or after January 1, 1987 had the section been effective.
RETROACTIVE APPLICABILITY OF THE STATUTE
Clear legislative intent is required in order to give retroactive application to an act of the Legislature when said act creates a cause of action where none previously existed (McKinney’s Cons Laws of NY, Book 1, Statutes § 53, at 104, n 86, citing Hastings v Byllesby & Co., 293 NY 413; Shielcrawt v Moffett, 294 NY 180; Jacobus v Colgate, 217 NY 235; Matter of Hodes v Axelrod, 70 NY2d 364, 369; Gleason v Gleason, 26 NY2d 28). Said retroactive application of a statute, which creates a cause of action where none previously existed, is not unconstitutional because of the retroactive effect (Jacobus v Colgate, supra, at 242; see also, Matter of Hodes v Axelrod, supra, at 369; Gleason v Gleason, supra).
The history, as well as the literal words of the 1990 enactment clearly express that the statute be retroactively applied; therefore, no court interpretation of legislative intent is required (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; Matter of Hodes v Axelrod, supra, at 369).
*176 What exactly does the statute mandate as to the instant claims? The window in the statute sucks into its sphere of influence all cases "which [were] pending on or after January 1, 1987, or which [were] dismissed on or after January 1, 1987 because this section was not yet effective, or which would have been actionable on or after January 1, 1987 had this section been effective” (L 1990, ch 762, § 1).
Was Santangelo I revived by that provision of Laws of 1989 (ch 346) as amended by Laws of 1990 (ch 762, § 1) which revives cases "which [were] pending on or after January 1, 1987”? It is claimants’ contention that their cases were pending as of January 1, 1987 as appeals were not completed as of that date. Such an application, although metaphysically arguable and subject to logistical formulation, requires total obfuscation of existing facts, necessitating a "quantum leap” possible only in the make-believe world of television. "Remedies may be modified even as to pending actions, but no action can be regarded as pending when it has expanded into a judgment and the time to appeal has expired, or the only appeal allowed by law has been taken and decided” (Germania Sav. Bank v Village of Suspension Bridge, 159 NY 362, 368; see also, Matter of Chrysler Props. v Morris, 23 NY2d 515).
As previously noted, the last category of cases to which the remedy derived by the amendment of General Municipal Law § 205-e can be retrospectively applied comprises cases which "would have been actionable on or after January 1, 1987 had [the statute] been effective” (L 1990, ch 762, § 1). The language of the statute waived the notice provision required by section 10 of the Court of Claims Act and prospectively extended the three-year time limitation for commencing an action, as required by CPLR article 2, only to those cases which otherwise would have been actionable on or after January 1, 1987. The instant claims do not fall within that category. The cause of action upon which the claims in San-tangelo II are based occurred on July 15, 1979, and the Statute of Limitations expired on July 15, 1982 and would have acted as a bar to any action started in 1987, notwithstanding the existence of the effect of the cause of action created by the amendment of General Municipal Law § 205-e.
As it appears to this court, the pertinent provision in Laws of 1990 (ch 762, § 1) applicable to the instant case is "or which was dismissed on or after January 1, 1987 because this section was not yet effective * * * is hereby revived and an action thereon may be commenced at any time provided that *177 such action is commenced on or before June 30, 1991” (emphasis supplied). The court agrees with claimants’ contention that in its decision following the trial of Santangelo I, the court found that the defendant had violated regulations of the Department of Mental Hygiene in the discharge of Mr. Bordes and in contravention of its own rules regarding the apprehension of Mr. Bordes after being advised of his presence in Maine and Florida (Santangelo v State of New York, 129 Misc 2d 898, 899-900, supra). Said violations would have constituted a viable cause of action on behalf of claimants had the statute under consideration been in existence at the time of trial. Although it is difficult to understand how a case dismissed prior to the enactment of General Municipal Law § 205-e could be said to have been dismissed "because this section was not yet effective” (L 1990, ch 762, § 1), this court is bound to give full effect to the language used by the Legislature in establishing the cut-off date for the retroactive application of said statute. In order to conclude, somehow, that the language "because this section was not yet effective” modified the cut-off date of January 1, 1987 so as not to include cases which were finally determined after January 1, 1987 and prior to the enactment, in 1989, of General Municipal Law § 205-e, one must assume that the Legislature was unaware of the date of passage of its own enactment. The Legislature having clearly expressed its intent that the statute be applied retroactively to include all cases dismissed on or after January 1, 1987, and Santangelo I having been finally determined in March 1988 (71 NY2d 393, supra), the court finds that Santangelo I comes within this provision of the statute.
The question which remains, however, is whether the Legislature has a right to infringe upon the vested rights established by a final judgment of the courts of this State. The question was answered in the negative by Judge Vann in Germania Sav. Bank v Village of Suspension Bridge (159 NY 362, 368, supra) in which he stated: "A judgment is a contract which is subject to interference by the courts so long as the right of appeal therefrom exists, but when the time within which an appeal may be brought has expired, it ripens into an unchangeable contract and becomes property, which can be disposed of or affected only by the act of the owner, or through the power of eminent domain. It is, then, beyond the reach of legislation affecting the remedy, because it has become an absolute right which cannot be impaired by statute. Remedies may be modified even as to pending actions, but no *178 action can be regarded as pending when it has expanded into a judgment and the time to appeal has expired, or the only appeal allowed by law has been taken and decided. It is then no longer depending, because there is nothing further that can be done to affect the rights of the parties.”
Judge Laughlin, in a Fourth Department case, citing Germania Sav. Bank (supra), stated as follows: "It is elementary law that it is not competent for the Legislature to annul a decision of the court, or to grant a new trial or a rehearing or to open a judgment after the time to appeal therefrom has expired, or existing remedies have been exhausted. That is judicial and not legislative power, and judgments are contracts within the protection of the Constitution” (Matter of Greene, 55 App Div 475, 482, affd 166 NY 485).
It is well to note that the vested contractual right found by the court in Matter of Greene (supra) inured to the respondent County of Niagara, thus establishing protection by the Constitution of a government entity as well as private parties.
Judge Laughlin (supra, at 483) further stated: "We are of opinion that the county of Niagara acquired a vested right by the decision of the court in the former action by the receiver of the bank against it, and that it was not competent for the Legislature to subject it to a new trial of the legality or equity of the claim of the bank.”
Although there is some disagreement in the decisions of our highest court as to whether a judgment creates contractual rights not to be infringed upon by the Legislature[1] (see, discussion in Louisiana v Mayor of New Orleans, 109 US 285), the same conclusion was reached declaring retrospective application of legislation to final judgments to be unconstitutional as depriving a party of substantial vested rights, in violation of section 6 of article I of the former NY Constitution (Livingston v Livingston, 173 NY 377; Germania Sav. Bank v Village of Suspension Bridge, 159 NY 362, supra).
Is the infringement argument applicable to tort actions? In Louisiana (supra, at 291), which held that a judgment of *179 damages recovered for a tort was not a contract in the constitutional sense, Mr. Justice Bradley, in his concurring opinion, stated that such a judgment "is founded upon an absolute right, and is as much an article of property as anything else that a party owns; and the legislature can no more violate it without due process of law, than it can other property.” This argument was adopted and applied by the court in Germania Sav. Bank (supra).
The inviolate rights of a party to the fruits of a final judgment rendered in its favor was more aptly stated by Chief Judge Huger in Gilman v Tucker (128 NY 190, 204) wherein he wrote: "We must bear in mind that a judgment has here been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication the fruits of the judgment become rights of property. These rights became vested by the action of the court and were thereby placed beyond the reach of legislative power to affect.”
MORE RECENT CASES WHERE THE ISSUE OF VESTED RIGHTS IS DISCUSSED AND DETERMINED
On the issue of whether vested rights derived from final judicial determinations can be affected by subsequent legislation retroactively applied, the Court of Appeals, in Matter of Chrysler Props. v Morris (23 NY2d 515, 518-519, supra), stated as follows: "When embarking on a journey into the realm of 'vested rights’, it is dangerous indeed not to proceed with great caution for the concept is a fiction and hides many unmentioned considerations of fairness to the parties, reliance on pre-existing law, the extent of retroactivity and the nature of the public interest to be served by the law. (Hochman, Retroactive Legislation, 73 Harv. L. Rev. 692.) The modern cases reflect more candid considerations of these relevant factors as well as a less inflexible view of the right of the Legislature to pass retroactive legislation. In any event, this is an area where broad conclusions are to be studiously avoided for it is impossible to predict in advance how in each concrete case the various factors will line up.”
In Chrysler (supra), the State Tax Commission had found that petitioners were entitled to a tax refund from respondent City of New York. At the time the Commission’s order was issued, its determination was final and not subject to judicial review. Subsequent legislation allowed for judicial review of *180 the Commission’s findings. Prior to payment of the refund, the City of New York applied for review of the Commission’s findings, alleging that the new legislation could be applied retroactively. After reviewing the case law and applying the parameters as stated above, the Court of Appeals held the statute to be unconstitutional and established a new test for determining when vested rights may be impaired by retrospective application of legislation enacted subsequent to the vesting of said rights. The court, in Chrysler (supra, at 522), further stated: "We have all been raised in a legal tradition which finds retroactive legislation distasteful. After balancing the various factors, we conclude that, absent any showing of the public interest to be served by this retroactive legislation (cf. People ex rel. H.D.H. Realty Corp. v. Murphy, 230 N. Y. 654), it should not be sanctioned here. The city should be required to make a strong case for retroactive effect. No persuasive case has been made.”
Subsequent to Chrysler (supra), the Court of Appeals decided Matter of Hodes v Axelrod (70 NY2d 364, supra) wherein the court had to determine if legislation could be applied retroactively to overturn one of its own decisions[2] which had held that petitioners, owners and operators of a nursing home, because of a conflict existing between Public Health Law § 2806 (5), as amended by Laws of 1981 (ch 607) and Correction Law § 701 (2), could not have their nursing home operating certificate revoked owing to an industry-related felony conviction. The anomaly in the law was corrected by new legislation enacted immediately after the court issued its ruling. In a subsequent action brought by the New York State Department of Health to revoke petitioners’ license based on the new legislation, the court adopted the reasoning and rule set down in Chrysler. It held that, based on strong public interest, the newly enacted legislation could be applied retroactively and revoked petitioners’ license. The court, however, also found that in the first action, petitioners had not secured a vested right in their nursing home operating certificate by dint of the judgment previously entered. The finding was based on the following: (1) petitioners’ admission that they had no vested right; (2) the fact that the legislation did not reopen their criminal prosecution; and (3) the unjustified and *181 unreasonable reliance based on an unintended legislation windfall, which was corrected by the Legislature immediately upon identifying the defect (Matter of Hodes v Axelrod, supra, at 371). Based upon the public interest test set down in Chrysler, the Court of Appeals further found that such test mandated the retroactive application in the case. The court, in Hodes (supra, at 371-372), stated as follows:
"There is a public interest in policing this industry and removing persons convicted of industry-related felonies from the operation of nursing homes. That this is a compelling interest is plain not only from the nature of the services offered but also from the publicized scandals that have plagued this industry. Automatic revocation in these circumstances in itself serves the public interest, so that upon conviction such operators may be removed expeditiously; nearly a decade has already elapsed since petitioners’ convictions. The amended statute purports to reach 'all existing operating certificates’, thus affecting only those licensees continuing to offer health care to the public. The application of the law to all such persons is rationally related to a legitimate governmental purpose, and results in the equal treatment of licensed operators.
"Thus, we conclude that there is a strong public interest to be served by permitting the law to be enforced as amended in 1983, and that in this case the public interest overrides petitioners’ claimed constitutional objection.”
The court also held that a res judicata defense was not applicable. It appears that denial of this defense was based on a change of facts created by dint of the new legislation which removed the impediment which had prevented the revocation of petitioners’ license in the first action. The statutory amendment materially changed the parties’ rights to the extent that the new request was independent of the first, and was thus considered a wholly distinct transaction (see, Matter of John P. v Whalen, 54 NY2d 89). Further, citing Matter of Meegan S. v Donald T. (64 NY2d 751), the court, in Hodes, stated: "[A] paternity proceeding was initially dismissed as untimely under the then-applicable two-year Statute of Limitations. The Statute of Limitations was thereafter enlarged to five years and the proceeding was recommenced within the new limitations period. We held that the amended Statute of Limitations was to be applied retroactively and that the second petition was not subject to dismissal on the ground of res judicata: 'The issue disposed of by the order of dismissal in the first *182 proceeding, however, was only that petitioner’s claim was untimely under the Statute of Limitations then applicable to paternity suits, and it did not reach the issue of timeliness under the amended law, which would permit petitioner’s claim” (Matter of Hodes v Axelrod, 70 NY2d 364, 373, supra).
The court further stated: "Although both revocation proceedings instituted against petitioner are based on the same felony convictions, seeking the same remedy, it is equally true that petitioner in John P. twice made virtually the same FOIL requests and plaintiff in Meegan S. twice commenced the same paternity suit. The operative consideration in all three cases is that the statutory rights of the parties were altered between the first and second proceedings. This being so, the two proceedings against petitioners can be said to lack the requisite identity for application of res judicata” (supra, at 373).
However, it appears that the basic principle espoused by the Court of Appeals in exempting Hodes (supra) from the protective umbrella of vested rights cases was the public interest doctrine, further supported by the distinction made through its reasoning on the issue of res judicata. "Petitioners’ arguments in support of res judicata are in the end much the same as their plea for application of the vested rights doctrine— that permitting a second revocation proceeding to go forward against them unfairly impairs rights already adjudicated by this court in the first proceeding. Indeed, the doctrines of vested rights and res judicata — while resting on different foundations and implicating different values — do have certain common elements, most powerfully a central concern for fairness. In this respect, however, our 'vested rights’ analysis and conclusions are pertinent. A second revocation proceeding is not unfair to petitioners in any sense that is protected by law; this proceeding is, to the contrary, supported by supervening considerations of public interest that have been properly balanced by the Legislature” (Matter of Hodes v Axelrod, supra, at 374).
There is, however, in the matter presently before the court, an interesting anomaly. Not only is res judicata relied upon by the defendant, claimants also raise the issue against defendant in their cross motions for summary judgment. The cause of action created by Laws of 1989 (ch 346) has been fully raised by claimants in Santangelo I in their attempt to establish that the defendant breached a special duty to claimants by violating departmental regulations. Although the court found a breach of regulations, no special duty was found *183 (Santangelo v State of New York, 129 Misc 2d 898, supra). Thus, if the court held the present statute to be applicable, collateral estoppel could fairly be raised on the issue of whether a violation of State regulations occurred. However, in all other respects as to the issue of res judicata, the reasoning in Hodes (supra) would apply here as the statutory rights of the parties have been altered in the intervening period between the conclusion of Santangelo I and the commencement of the action in Santangelo II.
What vested rights inured to the State as a result of Santangelo I? Simply stated, in its decision in Santangelo I, the court held that defendant did not have to expend public funds to compensate claimants as a result of the injuries sustained. The preservation and protection of public funds from unwarranted and nonmeritorious claims has always been a fundamental concern of the general public and of those officials entrusted with the authority to disburse public funds. So ensconced is this principle in our system of government that its preservation is mandated by our Constitution (NY Const, art VIII, § 1, et seq.). Even upon a legislative finding that an injustice has been done, as a result of which legislation is enacted to remedy such injustice, the Court of Appeals has found and stated as follows: "Such 'injustice’ may have been a cogent factor in inducing the Legislature to create an obligation to pay to them [public employees] all emoluments withheld because of their wrongful removal. It cannot free the Legislature from the restrictions placed by the Constitution upon its powers when it attempts to use public moneys to remedy that 'injustice,’ [sic] in cases where no legal obligation to pay existed at the time when payment was withheld” (Matter of Mullane v McKenzie, 269 NY 369, 376).
Thus, not only is the vested right, which inured to the defendant as a result of the judgment in Santangelo I, inviolate, its waiver is prohibited by constitutional mandate (Matter of Mullane v McKenzie, 269 NY 369, 376, supra). "A statute requiring a city 'to pay its public money for a service never rendered and for which it was not liable, falls within the inhibition of the provisions of the Constitution’ ” (supra, at 377; see also, Lewis v State of New York, 197 App Div 712).
Or, as was stated by the court in Matter of Greene (55 App Div 475, 482, supra) "It is no longer competent for the Legislature to impose a tax upon a county, city or town, to pay a claim which is neither founded in law or equity and which is in no sense for a public purpose.”
*184 In this context, it is to be noted that General Municipal Law § 205-e, as amended, did not change the public policy as to common-law negligence as stated by the Court of Appeals in dismissing Santangelo I (cf., Brown v Ellis, 145 Misc 2d 1085, supra).[3] This legislative amendment simply places police officers on the same footing as firemen (General Municipal Law § 205-a). Thus, in the absence of any change in the public policy as enunciated in Santangelo I, and since public policy defines public interest, one cannot say that public interest is served by retroactively applying this legislation to Santangelo II.
In applying the standard as enunciated in Chrysler (supra) and Hodes (supra), this court can find no compelling public interest which would be served by applying this legislation retroactively (Matter of Chrysler Props. v Morris, 23 NY2d 515, supra).
Upon review of the law as stated, it is this court’s opinion that Laws of 1990 (ch 762), which amended Laws of 1989 (ch 346), to the extent that it be retroactively applied to revive Santangelo I, wherein final judgment has been obtained, is unconstitutional.
Based upon the foregoing, defendant’s motions, Nos. M-42937 and M-42936, to dismiss the claims are granted and the claims in Santangelo II are hereby dismissed. Claimants’ cross motions for summary judgment, Nos. CM-42980 and CM-42981, are denied as moot.

. For a discussion on this issue, see Louisiana v Mayor of New Orleans (109 US 285) wherein Justice Harlan, in his dissenting opinion, held the judgment rendered in the tort action against the City of New Orleans to be a contract which cannot be violated by subsequent legislation affecting the remedy available for its enforcement. Justice Harlan, in the same discussion, cited with approval the holding that " 'any claim [brought] on [a] judgment is setting up a cause of action on contract’ ” (supra, at 293, quoting Taylor v Root, 4 Keyes 335, 345).

. The Court of Appeals was faced with the same question in Matter of Greene (166 NY 485, affg 55 App Div 475) when, as a result of subsequently enacted retroactive legislation, it was asked to review a previous finding of that court.

. The Court of Appeals affirmance was based on public policy principles underlying the application of the "fireman’s rule” as it pertained to the nature of claimants’ occupation (see, Santangelo v State of New York, 71 NY2d 393, 398). As claimants in Santangelo I, in their appeal to the Court of Appeals, did not press the contentions of liability based on violations of "particular statutes and regulations”, contentions which had been raised at the trial court level, the Court of Appeals did not address these issues (Santangelo v State of New York, supra, at 398).