OPINION OF THE COURT
Gerard M. Weisberg, J.
On February 14, 1984, parolee George Agosto shot and killed Police Officer Thomas Ruotolo and seriously injured Officers Hipólito Padilla and Tanya Brathwaite as they attempted to apprehend him. Agosto, it is alleged, was at large because his parole officers violated section 259-i (3) of the Executive Law and section 8004.2 (9 NYCRR 8004.2) of the regulations promulgated thereunder by failing to report Agosto’s arrest for burglary to the Parole Board. As a result, claimants filed a claim with this court on March 25, 1985, naming the State of New York as the sole defendant.
As is asserted further, in 1979, Agosto had been sentenced concurrently to a term of from 5 to 15 years for manslaughter and 0 to 7 years for criminal possession of a weapon. After receiving credit for time served under a prior youthful offender adjudication, he became eligible for parole and was released on August 23, 1982. He was assigned to the Bronx West Parole office.
Agosto reported to this parole office until July 5, 1983 when he was taken into custody by the police and charged with burglary and resisting arrest. Although his parole officers were notified of these events, they failed to report the violations to the Parole Board in alleged contravention of Executive Law § 259-i (3) and 9 NYCRR 8004.2.
It was claimants’ theory that had the Board been notified, it would have revoked Agosto’s parole, thereby preventing the *822 tragedy. We understood this to raise two related causes of action: common-law negligence and one based on the alleged violation of the Executive Law and 9 NYCRR 8004.2. We held that both failed to state a cause of action; the former based on the "fireman’s rule”[1] (see, Santangelo v State of New York, 71 NY2d 393) and the latter based on a lack of duty. (Ruotolo v State of New York, 141 Misc 2d 111, 114, affd 157 AD2d 452, lv denied 75 NY2d 710.)
Claimants appealed. During the pendency of their appeal, General Municipal Law § 205-e was enacted. (L 1989, ch 346.) Claimants, in addition to arguing the error of our opinion, urged the applicability of this new section to their claim.
The Appellate Division, First Department, affirmed. (157 AD2d 452, supra.) As to section 205-e, the Appellate Division held it inapplicable since it was not intended to be retroactively applied. The Court of Appeals denied leave to appeal. (75 NY2d 710, supra.)
Subsequently, effective July 22, 1990, section 205-e was amended to provide for its retroactive application. (L 1990, ch 762.) Since claimants’ action was dismissed after January 1, 1987 because section 205-e was not then effective, timewise, claimants are clearly within the section. (Santangelo v State of New York, 149 Misc 2d 171.) Relying thereon and on CPLR 2221, they now move to renew their opposition to defendant’s prior successful motion for summary judgment. The State first opposes this relief on the ground that it is procedurally defective.
We note that General Municipal Law § 205-e specifies a procedure for bringing cases such as this before the court: a new claim was to be filed. (Santangelo v State of New York, 149 Misc 2d 171, supra.) As of the time this motion came before us, claimants had failed to do this. Be that as it may, section 205-e does not explicitly prohibit the procedure claimants have employed. Nor do we find such a prohibition to be implicit. Rather, the obvious intent of the Legislature was to provide claimants’ class with a day in court on their possible *823 section 205-e claims. (See also, CPLR 104.) Thus, the question becomes, is claimants’ motion timely under CPLR 2221.
Defendant points out that what is being argued is that the result here should now be different based on a subsequently enacted statute. This is a motion for reargument and not renewal. Moreover, the time within which such a motion may be made, to wit, the time to appeal, has long since expired. Defendant concludes that the motion is untimely.
We agree with the State that this is a motion for reargument and not for renewal. It is based on a change in the law. (See, e.g., Matter of Huie [Furman], 20 NY2d 568.) While CPLR 2221, which controls, does not specify the time within which such a motion must be made (Luming Cafe v Birman, 125 AD2d 180), case law has filled this void. The courts have decreed that the motion must be made within the time to take an appeal from the order to be reargued. (Supra.) The rule is based on the same rationale as res judicata; that is, once the time to appeal has run, the parties reasonably expect their rights and positions to have been finally determined. To allow a different rule would destroy the finality of judgments. (Matter of Huie [Furman], 20 NY2d 568, supra.)
Where, however, the Legislature had indicated that rights, although fixed, may be redetermined, the Court of Appeals has allowed a motion to reargue even after the time to appeal had expired. (Weissblum v Mostafzafan Found., 60 NY2d 637.)
Here, the amendment to section 205-e clearly indicates a legislative intent to reopen matters such as this notwithstanding that they may have been finally determined. The court-imposed time limit in CPLR 2221 therefore should have no application. We find the motion to be timely.
Defendant next cites Santangelo v State of New York (149 Misc 2d 171, supra) for the proposition that the retroactive application of section 205-e to the case before us would be unconstitutional.[2] Santangelo involved a cause of action by police officers who were injured by an escaped mental patient. The action was against the State based on its institution’s allowing the escape. (Santangelo v State of New York, 129 Misc 2d 898, affd 127 AD2d 647, affd 71 NY2d 393 [hereinafter Santangelo I].) The affirmance at the Court of Appeals *824 level was predicated on the "fireman’s rule” which it extended to the police.
Pursuant to General Municipal Law § 205-e (as amended by L 1990, ch 762, § 1), Santangelo was revived. (Santangelo v State of New York, 149 Misc 2d 171, supra [hereinafter Santangelo II]) In Santangelo II, the State argued that retroactive application of section 205-e would be unconstitutional.
The Santangelo II court first held that it had the jurisdiction to determine the constitutionality of the retroactive application of section 205-e to the case before it. It then found that the State had acquired final, vested rights by virtue of the judgment in Santangelo I (supra) dismissing the claim which had been affirmed by the Court of Appeals. The Santangelo II court also noted that the retroactive abrogation of vested rights is offensive to section 6 of article I of the NY Constitution. It therefore concluded that section 205-e could not be constitutionally applied to the claimants before it.
While we agree with all of the stated premises above (see, e.g., Friedman v State of New York, 24 NY2d 528; Germania Sav. Bank v Village of Suspension Bridge, 159 NY 362), we find we must disagree with the unstated one, to wit, that the State of New York is to be considered the same as any other judgment holder with respect to New York State legislation. Since we cannot agree with that proposition, we cannot agree with Santangelo II’s conclusion.
In that regard, we see that in none of the cited cases was the State the defendant. Alternatively, in Sweeney v State of New York (251 NY 417), the State was the sole defendant in a breach of contract action in the Court of Claims. Thereafter, the Civil Practice Act was amended to provide for the recovery of interest in that type of action. The Appellate Division held the statute unconstitutional in its retroactive operation on the ground that the effect was to deprive the State of property without due process of law.
The Court of Appeals reversed and stated: "There is no occasion to consider at this time whether the statute, in so far as retroactive, may be sustained against persons other than the State itself. Certain it is that the State which enacted it may not be heard to complain that the enactment is void as a violation of 'due process’ * * * The award of interest is not in any prohibited sense a charity or bounty. It has its roots in a reasonable conception of the demands of equity and justice”. (Sweeney v State of New York, 251 NY 417, 419-420, supra.) *825 Thus, there is no constitutional prohibition against the New York Legislature’s waiving of New York State rights, whether vested or otherwise, at least in the situation before us. (See also, Matter of Unseld, 44 Misc 2d 649; Rieseberg v State of New York, 40 Misc 2d 676.)
We therefore reach the merits. Have claimants stated a cause of action under General Municipal Law § 205-e?
Focusing on the broad language contained in section 205-e, which makes actionable the violation of "any of the statutes, ordinances, rules, orders and requirements” of the Federal, State or municipal governments, claimants argue that defendant’s alleged violations of the Executive Law and 9 NYCRR 8004.2 satisfy this prerequisite. Were we to look at no more than the language of the statute, we would have to agree. The claimants recognize, however, that section 205-e is essentially identical to General Municipal Law § 205-a, upon which it was based, and that the latter has not been so broadly construed. Claimants therefore cite Brown v Ellis (145 Misc 2d 1085, affd sub nom. Brown v Harrington, 150 Misc 2d 375 [App Term]) for the proposition that the narrow construction which has been afforded section 205-a should not be followed with respect to section 205-e.
In Brown (supra), a New York City police officer was injured in an automobile accident. The offending drivers were named as defendants whereupon one moved to dismiss pursuant to Santangelo I (supra) and the "fireman’s rule.”
The Brown court first assumed arguendo that the rule applied. It then stated that section 205-e is essentially identical to section 205-a. It also noted that section 205-a had been construed as applying only to on-premises safety violations. That notwithstanding, the court then held that since the risks encountered by the police were dissimilar to those encountered by firefighters, in order to achieve the stated legislative intention of providing "similar protection” to both (145 Misc 2d, at 1091, supra), section 205-e had to be interpreted as encompassing violations of any statute. In other words, construing section 205-e as section 205-a had been, would, in the court’s view, leave the police without any real remedies. Based on this conclusion, the Brown court decided that it was unnecessary to address the question of whether the "fireman’s rule” actually applied.
Since we cannot agree with the Brown court’s assumption vis-á-vis the "fireman’s rule”, we cannot agree with its conclu *826 sion. The premise was that the rule applied, to the facts before it. However, the predecessor authority to Santangelo I (supra), which defined the rule, clearly recognized the inapplicability of the doctrine to the Brown fact pattern. Nor did Santangelo I, while extending the rule to police, change its basic parameters. Moreover, since Santangelo I was factually dissimilar from Brown (supra), it cannot stand as authority for invoking the rule there by extension.
Thus, in Kenavan v City of New York (70 NY2d 558), the Court of Appeals revisited the "fireman’s rule” after firefighters were injured by a third party as a result of New York City’s failure to remove an abandoned car. The Kenavan court noted that section 205-a had been held not to encompass violations of the Vehicle and Traffic Law and reaffirmed that section 205-a was limited to statutes or ordinances dealing with on-premises maintenance and safety. An examination of the cases cited by Kenavan, however, reveals that the reason given for concluding that section 205-a was not intended to encompass violations of, for example, the Vehicle and Traffic Law, was because the injured firefighter already had a common-law cause of action in that situation. That is, since they had a common-law remedy unaffected by the "fireman’s rule”, there was no need for a section 205-a cause of action.
In McAvoy v Di Leo (40 Misc 2d 46, revd 43 Misc 2d 164), cited by Kenavan (supra), the plaintiff firefighter was injured in an automobile accident while responding to a fire. The driver of the offending vehicle was the defendant. The plaintiff pleaded two causes of action: common-law negligence and section 205-a. The defendant conceded that the common-law cause of action was viable. In fact, part of the rationale for the dismissal of the section 205-a cause of action was the availability of common-law relief. (McAvoy v Di Leo, 40 Misc 2d, supra, at 48; see also, Buckley v City of New York, 56 NY2d 300; Ortiz v State of New York, NYLJ, May 3, 1991, at 28, col 6.)
As to Santangelo I (supra), itself, it was not an action against the claimants’ assailant, i.e., the active tort-feasor, but against the third-party mental institution, which was only passively negligent. Brown (supra), where the defendant was directly and actively involved in causing the injury to the plaintiff, is therefore factually dissimilar. Moreover, while we, of course, recognize that the distinction between active and passive tort-feasors has been little employed since the advent of comparative negligence (see, Prosser and Keeton, Torts § 51 [5th ed]), we think the characterization is helpful in analyzing *827 the situations where the "fireman’s rule” should appropriately apply.
Thus, firefighters and the police may be said to be employed by the public to deal with emergencies which we may accidentally create and which may occasion injury. They are the experts who society has retained to cure the situations. It is, therefore, inappropriate, the Court of Appeals has held, for them to look to us for protection in the form of tort compensation. (Santangelo v State of New York, 71 NY2d 393, supra; Kenavan v City of New York, 70 NY2d 558, supra.) It is their job to protect us and they are trained and compensated to do so. That is not to say, however, that they have been hired to be, for example, run down in the streets; that they can protect themselves better than we from negligently driven vehicles; or that any reason exists why we should not compensate them for our active or intentional torts which directly injure them. In other words, persons and institutions are clearly to be encouraged to seek police or firefighter assistance, when required, notwithstanding that it was their own negligence which may have occasioned the need. Insulating them from liability to these professionals furthers that goal. A careless driver, on the other hand, is engaged in no useful societal activity and therefore needs no judicial encouragement in the form of immunity from suit. Thus, the public policy underpinnings of the doctrine lead to the same conclusion: the "fireman’s rule” should not apply in the Brown situation. (But cf., Wawrzyniak v Sherk, 170 AD2d 972.)
Since we do not believe that Santangelo I (supra) and the "fireman’s rule” applied in Brown (supra), the perceived inequity in construing section 205-e in pari materia with section 205-a disappears. Notwithstanding the unavailability of the statutory cause of action, the plaintiifs can still seek redress under their common-law rights.
The instant case, however, is one where the "fireman’s rule” does apply. The defendant is an agency which allegedly did no more than allow claimants’ assailant to be on the street. Therefore, for them to obtain a recovery, it must be under section 205-e.
In our view, the legislative history to section 205-e confirms that it is to be construed in pari materia with section 205-a. A memorandum of the State Executive Department in support of the statute provides that upon enactment police, like firefighters, will be able to take the benefit of "well-developed *828 bodies of law and regulation that apply to the maintenance of premises and the mitigation of hazards such as fire, explosion and the like. Kenavan v. City of New York, 70 N.Y.2d 558 (1987). These impose clear duties on property owners and are intended to benefit firefighters, police officers and any other person who may enter upon premises subject to regulation.” (Mem of State Executive Dept. 1989 McKinney’s Session Laws of NY, at 2141 [emphasis supplied].)
Here, the statute and regulation allegedly violated are not ones which deal with on-premises safety and maintenance. Moreover, even if we were to broaden the rule to include off-premises safety regulations, we think they should be limited to those which were intended to create a duty or private right of action in the claimants’ favor. As has been previously held, and affirmed on appeal, these do not. The claimants may therefore not rely on them. (See, Kenavan v City of New York, 70 NY2d 558, supra; Campbell v Lorenzo’s Pizza Parlor, 172 AD2d 478, Wawrzyniak v Sherk, 170 AD2d 972, supra.) In either case, they have failed to state a cause of action.
For the foregoing reasons, the motion is denied.

. Although the doctrine has universally been referred to as the "fireman’s rule”, (see, e.g., Santangelo v State of New York, 71 NY2d 393, 396), we believe that is an anachronistic, gender-biased term (see, Kaye, A Brief for Gender-Neutral Brief-Writing, NYLJ, Mar. 21, 1991, at 2, col 3), which could be avoided by use of, for example, "firefighters’ rule.” (See, NY Jud Comm on Women in Courts, Fair Speech: Gender Neutral Language in the Courts, at 5.)

. We offer no view on the propriety of the Attorney-General of the State of New York arguing against the constitutionality of a New York State statute. (Cf., Executive Law § 71.)